appellants cross-appellees. Please proceed. Thank you, Josh. Good afternoon. Lady Praetor Court. I represent the appellant and the cross-appellee. One necessary parties    I represent the appellant and the cross-appellee. One necessary parties Council, we're having difficulty hearing you. Could you stay closer to your microphone, please? I'm sorry, Joy. I'm using my laptop and I'm not exactly sure where the microphone is. Can you hear me okay now? I can. Stay closer to your laptop. All right. Okay. Sorry about that. Nationwide Covenant Action is not moved because of the J. K. Lowe lawsuit. Underlying lawsuit has been dismissed on January 27, 2022 prior to the trial court final judgment prior to refiling the appeal in this case. The J. K. Lowe did not appeal their disqualification and dismissal order. The argument that the J. K. Lowe can simply refile their lawsuit a year from now is ludicrous. This judgment was a judgment on merit. They didn't have standing to file the lawsuit that they filed. The circuit court was correct when it denied sanction. It got it right when it denied judgment, nationwide judgment under bleeding with respect to Cal 3 based on the policy exception because that was to dispel other material fact. But it got it wrong when they said that didn't matter. First, the court should not decide an issue or issue an advisory opinion. The act requires three things. One, the plaintiff must have a tangible legal interest. Second, the defendant has opposing interest. And third, there must be a case of controversy between the party during the pendency of the case. We didn't have that here. Additionally, all necessary parties had to be present in the lawsuit. We did not have that in this case. The other line action 2-0-L-1-5-0-7. Get closer to, you're going to have to, since you don't have a microphone apparently except in your laptop, you're going to have to be closer to your laptop and not turn away from it. All right. The other line action 2-0-L-1-5-0-7 . Okay. We're not hearing you, sir. Justice Soldier, can I try to give him some direction? Yeah, go ahead. Counsel, when you turn your head to the right, we're losing you. I know you're reading off of something. You have to put it in front of you. As long as you keep square to the camera and you're looking right at us and close, we can hear you. As you turn to the right and try to read off of your papers, we're losing you. I think that might be the problem. I'm going to stay right here and hopefully that will solve the problem. Just let me know if you couldn't hear me. All right. One, Judge Kappas already dismissed the underlying lawsuit on January 27, 2002. When Pam Vare and Ken Parshall, the substitute plaintiff, substituted in, Judge Kappas disqualified or dismissed the underlying lawsuit on January 27, 2001 and 2022. And then, Judge Kappas on August 24, 2002, disqualified the underlying substitute plaintiff attorney because he was working with disqualified attorney to avoid the court orders. So we had no attorney in the underlying lawsuit. So the substitute plaintiff basically voluntarily dismissed it. And that was on September 29, 2002. And we're asking the court, I think we have final motion, asking the court to take judicial notice of the order in 20L1507, the January 27, March 21, August 24, and September 24 of 2002. This court should also take notice that the underlying lawsuit, that nationwide lawsuit is practically gone, is no longer existing. It's gone. When a lawsuit is voluntarily dismissed, all prior orders are final and appealable. The checker did not file the appeal of the dismissal order. The substitute plaintiff also did not appeal their dismissal order. So that is gone. And the Supreme Court, our Supreme Court, is really clear. This court should not decide an issue in advisory opinion when the underlying lawsuit, when the issue no longer exists. They respond with a speculation why they were worried about perhaps checker will refile the lawsuit a year from now. That's just wrong. And nationwide basically asking the court to issue an advisory opinion on that. This is something that the court should not respond. Now, with respect to the Vice Judicator and Gladwell's problem, we're asking the court to apply the doctrine defensively, not offensively, like the trial court did below. The statute is clear. In 18 MRM1123, section 616C, allow the plaintiff to amend the complaint before or after the judgment. So in 18 MRM123, nationwide has the option to amend the complaint, showing all the parties, all the board directors that they want to have a judgment against the board directors. Then we point out in our brief, they did try improperly showing two board directors, Cal Stratter and Cather Perry, in their motion of assembly judgment. And Judge Fullerton didn't allow that. He just entered a judgment with respect to disassociation alone, the corporation, the name insured of the policy. Now, the judge will have had a long history of suing disassociation, as we listed out in our brief. First in case number 17SR 10066, before Judge Archling. A few months later, 18CS509 before Judge Winn. And then a few months later, 18MR1123, which is Judge Fullerton's case. And then, when they were denied, they went to file a new lawsuit. And that is the underlying lawsuit 20L1507. And that lawsuit triggered nationwide to file another lawsuit against disassociation joining all board directors except one board director, Ina Aponte. And I'll get to Ina Aponte in a minute. I think we discussed it in our brief as well. Ina Aponte is basically a road writer. She was working with the Chagall to sue us. They're working together. She hired an attorney so that they can work together. She was asking us to pay thousands of dollars in her unit, and we said, no, this is a common, this is not a common area. This is your unit. Fix it. So that's what we have here. And now nationwide tried to whiz out of this mess by saying, well, look, the policy will cancel. Now, that allegation we pointed out in the brief was factually false. It was never canceled. We knew it. So we have a different policy now, but not what it looks like. Now, in the insurance cover action, the underlying claimants are always necessary party. So in 18MR 1123, the Chagall are necessary party. In 20L1507, we were just careful, the Chagall are also the necessary party, and then the substitute plaintiff, Kim Hartzberg and Pam Vail are necessary. And they will not join in the lawsuit. Second, the trial court should not make any decision that might prejudice the party in the underlying lawsuit or the merits of the underlying claims. That's what we've got here. Judge Blunton, when he went to judgment on the pleading with respect to the counter to nationwide, he acknowledged there was a mutual fact, the disputed fact with respect to count three. He said, no, I cannot decide based on the four corners or the eight corners of the pleadings. So he denied it, but then he said, and that part of it is correct. But then he went on and said, well, that didn't matter, because I already claimed the judgment based on rights to the count at count one and count two nationwide, so make no difference. You're gone. You're out. That judgment was incorrect because now we have Beata McInerva, the checker attorney, before she was disqualified. She ran to Judge Cavus' courtroom and said to Judge Cavus, look, I don't have to do anything. I'm sorry, Judge. I do apologize for the internet for some reason.  but I'm back here. I'm going to finish real quick on my time, Judge. If I may. Just a couple of things. I know I've lost some time there, but in terms of the hurdle, what we have here is 1123 18MR1123 is still pending. Judge Fullerton denied the order. It's still pending. We don't know if the check law is going to appeal that order. We don't have the trial yet. If and when they file an appeal and go before the court and get denied, that would be the end of it because Judge Fullerton denied the order would be a right to shoot a cutter. Number two, with respect to 20L1507, the time to appeal their dismissal order is gone. It was back in January 27, 2022, and if they didn't do that then, it was gone since September 29, 2022. Well, four months later, not going to happen. So we have Anna Ponder, and that's the chair of the party. She's the secretary. She's the director of the association. She has keys to the Black House offices, access to the documents, and she didn't cooperate, and she wasn't sued. Why? Because there was an unauthorized release between the J. K. Lo and Anna Ponder. We didn't know about that until a year later when Nationwide provided us a copy when we asked. Well, we got sued twice, and I asked Nationwide attorney, look, if there's any documents, gentlemen, between the J. K. Lo and Anna Ponder or anything, I wanted to know. That's when we were provided with unauthorized by Beate McGillivray, J. K. Lo attorney, signed back in March of 2022, a year prior. We had no idea. Now with respect to Nationwide appointed counsel Katherine Weiler, she didn't protect her guys. What she did, she provided privileged communication to Nationwide, and Nationwide used that to file a motion for someone's judgment in 18 MI 1123, the same thing. And then when we asked her, hey, what's going on? She wouldn't tell us. She wouldn't tell my office anything. I mean, when you receive a privileged communication from an opposing counsel, whether by mistake or accident or whatever, you don't use it. You tell your opposing counsel, hey, you sent me privileged communication with your guy. Is that a mistake or what? You know, I'm giving back to you. I haven't read it. That's the rule. You don't use it in court. That's not what happened. Nationwide used it in court. Now, two minutes. Georgia camp. Georgia I think I have maybe three minutes or so. Georgia camp is about the political. It's not a secretary. She's not a president. She's not the president. She's not even the party to the 18 MI 123. She's not even the party to the nationwide law. When she'd been sued, she went to nationwide, called them, asked, hey, am I covered or not? What's going on? And she would tell them, don't worry about it. You're covered. The policy is in effect. Nothing to be concerned about. Don't worry. Ms. White then turned around and said, look, the policy was canceled. Factually, that was incorrect. Now, we didn't have any discovery because we were denied. This is before the court on judgment on the pleadings, so we have no discovery. And in an hour later, sent to Georgia camp, they're threatened. They didn't tell her, hey, go get your independent counsel. They don't care what's going on. They didn't do that. And the letter even was published on page 288789 of the record. They told her to sign, not only for herself, but on behalf of the association as well. And that's on page 288789. She didn't sign that. And the one thing, one board director was in the hospital. She's in her 80s. She was in the hospital for a month during COVID-19 in 2020. She had no family visit because that was in the height of the COVID-19 pandemic. No one can talk to her. Even family members, they wouldn't allow any visit. Guess what? She's being sued now in this court, in this case because she was laid in bed in the hospital. Josh, you have also a recent question. Duong, your time has expired. You'll have time in reply to respond to the cross appeal. Okay? Thank you, Judge. Mr. Saragalas? Saragalas? Saragalas. Perfect, Your Honor. Thank you. You may respond. Okay. Thank you. May it please the court, my name is Peter Saragalas. I represent Nationwide in this appeal. I do want to back up a little bit factually. I'm sure the court has read the briefs, specifically the statement of facts in my brief and is familiar with the case, but I do want to back up a little bit. Nationwide back in 2019 was allowed to intervene in case number 18-MR-1123 which from the record and from the briefs you'll see is one in a series of cases between the association, its board members, and its residents specifically Teresa DiGiulio and Katazina DiGiulio. On April 14, 2020, Nationwide was granted summary judgment in that case and against the association after the circuit court found that there was a breach of the agreement. Nationwide asked for and the circuit court granted 304A language from that summary judgment order and no appeal was ever taken. The current action assigned case number 2021-MR-227 is a declaratory judgment action where Nationwide sought and obtained a declaration that it owed no duty to defend or indemnify the association and its board members. In a lawsuit that was filed by the DiGiulios derivatively on behalf of the association members in the law division of DuPage County, after the court in 2018-MR-1123 denied leave to file that derivative suit in that case. Here, the circuit court held that Res Judicata and Collateral Estoppel applied to bar the association and its board members from seeking a defense in the derivative suit because of the judgment that was entered in 2018-MR-1123. The way this case is developed is somewhat unique and the appellants try to paint in their briefs especially a case of some sort of masterful design by Nationwide. Truth be told, Nationwide has been rolling with the punches in this case and this case is developed in a very unique way. Back when the tender of defense was made with respect to 2018-MR-1123, Nationwide offered to defend and indemnify the association and the board members that were named in that suit without limitation up to the Nationwide policy limits. The appellants concocted a conflict whereby they contended that Nationwide could not appoint one attorney to represent all the interests of the defendants because of a supposed conflict with Ina Aponte. So, in response, despite the fact that Nationwide believed that it had the right to control the defense, offered as a compromise to appoint two defense counsels, one to appoint the supposed conflicted member, Aponte, and another to represent the association and the other board members. Those offers were refused. Eventually, Nationwide had no choice but to move for a breach of its cooperation clause because as the case developed, the appellants deterred settlements from actually taking effect that were entered in the case. One of those settlements was the settlement of the SICA complaint that was filed by the de Julio's, and then there was another subsequent settlement entered between myself and Mr. Ducton, which gave Catherine Wheeler, who he mentioned in his argument, sole authority to control the defense of the association and the board members in 18-MR-1123. In that case, after the summary judgment that Nationwide won in 18-MR-1123, the de Julio's then tried to file a derivative suit in that case. Judge Fullerton denied that. He did that without prejudice, and the de Julio's then refiled in the law division. That's the case that Judge Fullerton here held Nationwide doesn't owe a duty to defend. The complaint here sets forth, obviously, you know, three counts, res judicata and collateral estoppel applied to bar duties to defend. Then we argued in count two that even if res judicata and collateral estoppel didn't apply, the court could take judicial notice of its record in 18-MR-1123 and find that the board members breached their independent duty to cooperate with Nationwide because of their deterrence in actually consummating the settlements that were reached in the first case. That judgment now is obviously attacked here. The first argument that they make is that the identity of the parties. Now, again, I mentioned that this case is developed somewhat uniquely. The appellants complained that we didn't name all of the board members in the first suit. And the reason why we didn't do that is because the board members, the individually named board members in 18-MR-1123 actually accepted the defense of Nationwide. There was no reason for us to sue them. Who we did sue was the Association. But rest judicata and collateral estoppel apply because the Association of course is an inanimate legal entity that can't take any action without the action of its board members. Now, in this case, we alleged and all of the defendants admitted that they were board members during all of the operative events in 18-MR-1123. And so it's our contention that even if they weren't named in the first suit that they are responsible for the breach of the cooperation clause. And of course privity is a satisfactory way in order to satisfy rest judicata and collateral estoppel. I don't think that there's any serious argument against the identity of the causes of action. I don't think that there's any serious argument made with finality of the summary of judgment that was obtained in 18-MR-1123 in favor of Nationwide. They do raise fairness concerns. The fairness concerns and that sort of ties into the offensive application of collateral estoppel versus the defensive application of collateral estoppel. You know, courts are warned not to apply offensive collateral estoppel unless it's fair in the case. This is an insurance coverage action. If Nationwide had sat on its hands and not filed a declaratory judgment suit, at some point it would have been accused of waiving its coverage defenses and or estoppel. So Nationwide really had no choice other than to file a suit to stand on the judgment that it previously obtained in 18-MR-1123. So in a sense, although technically this is offensive collateral estoppel, the practical effect in collateral estoppel is an equitable doctrine. This is more like defensive collateral estoppel because it involves an insurance coverage. The other fairness concern that they raise again is that for some reason the judgment 18-MR-1123 that Nationwide obtained is somehow void because we didn't name the de Julios. The de Julios were already part of the suit, of course. So all of the parties against whom were necessary parties or fairness concerns regarding res judicata and collateral estoppel, everyone was present in 18-MR-1123. No one was robbed of their opportunity to be heard or anything like that. So application of collateral estoppel and res judicata in this case is perfectly fair. Mr. Duckdong is correct that the trial court here entered the judgment on counts one and count two of Nationwide's complaint and did not feel it necessary to reach count three, finding that count three was mooted by the judgment on counts one and count two. This court, of course, I believe should affirm based on res judicata and collateral estoppel and in the alternative on count two which is independent application of the breach of the cooperation clause. But it can affirm on any basis in the record and I think that you can look at count three and the complaint that was filed derivatively and the exclusions that we cited and find the duty to defend is barred. The first count of the derivative action alleges that the directors are liable for failure to maintain fidelity insurance because of the summary judgment nationwide obtained in 18-MR-1123. Count two of the Jujulio's derivative complaint alleges that the directors are liable for their failure to comply with CICA. Count three alleges misappropriation of funds for personal profit and count four is for self-dealing and discrimination in that the directors took action for their own benefit at the expense of the association. We've cited a number of exclusions in our brief. Those are found in the record at C-156. I'll point the court directly to exclusion E, which excludes any coverage for transactions of any insured, including the board members gaining a personal profit or advantage not shared equitably by the owners. The complaint fits squarely in there. I want to address the mootness argument. Mr. Duckdong is contending that this case is moot because the derivative suit has now been dismissed without prejudice. It seems like he searched the docket as did I prior to this oral argument and there was activity in the case in September of 2022. The suit was dismissed without prejudice, so there is a year to refile. If the case is indeed moot, it begs the question of why Mr. Duckdong hasn't yet dismissed his appeal. There's also the issue, as we raised in our brief, of defense costs. There's been no withdrawal of defense. There's been no indication that they're willing to walk away from the defense fees. In fact, I'm fairly certain that they want those. So the case is not moot by any means. It's still very much life. There's defense costs to that issue and the court should proceed to rule on these issues and affirm. Now, we've raised in our cross-appeal the whole record is marred by supposed conspiracy theories spun by the defendant's counsel. Ms. Wheeler apparently betrayed her clients. I was apparently a bad person for withholding a settlement agreement that I never had possession of and which I turned over to Mr. Duckdong the second he asked it for me. I got it from defense counsel and gave it to him right away. That was the first time I ever saw it. They paint some sort of grand scheme and they really doubled down on those efforts in their motion to reconsider. They published an ARDC response of Ms. Wheeler. They accused me of incredible malfeasance. In their briefs to this court, they do the same thing. Judge Fullerton, in denying my motion for sanctions, mentioned that he believed that the arguments put forth by Mr. Duckdong in this case were animated by his personal animosity toward me, yet still denied the sanctions motions. I'm asking the court to look at the things said about myself and Ms. Wheeler and Nationwide's need to respond to those things and to enter sanctions on its own under rules 36685 and 375. Unless the court asks questions, I'm going to rest until my reply. Any questions from the court? A couple. Mr. Sergelich, you indicated that in the underlying 18-1123 lawsuit, you did not name the individual directors. You also said the reason for that was that you still provided coverage to them. Am I correct about that? Yes. We hired Ms. Wheeler to defend the board members that were named in 18-MR-1123 and we moved for judgment on the breach of the Cooperation Clause when it became apparent that the directors and the association were not going to comply with the defense. What's your argument here in response to the fact that they were not named in the DACA action was that you were still defending them? My response is that when we intervened, they had accepted the defense provided by Nationwide, so there was no reason to sue them. I suppose we could have moved at the end of the case to amend the judgment to conform to the proofs, but we didn't feel it necessary because of the privity between... I believe that Judge Fullerton, in my motion for summary judgment, asked for judgment against Shratza and the other board members, Perry, but we didn't feel it necessary to move to conform the judgment to the proofs in that case because of the privity that it was going to be a restricted collateral estoppel in any event because the actions of the association are controlled by its board members. Thank you. And then my second question is there are several motions with the case to take judicial notice of orders in the other case. Do you have an opinion as to those? No, I think it's perfectly... We did object to the judicial notice, but I think it's perfectly permissible for the court to look at the orders in the Law Division case, and there's also a motion to strike my reply brief. I'll ask that that be denied, which was also taken in the case. Sure. Thank you, Mr. Gilles. Thank you. Any other questions from the court? I have none. Okay. Thank you. Mr. Dicton, you may reply. I mean myself. Yeah, you did. Sorry, Judge. I'm going to be responding to a couple of points here. Number one, counsel said there are two sentiments, one with the jugular, one with the association, and they were paid. Well, here's the problem. The payment for the jugular was paid to the attorney, $1,500. There wasn't any payment with respect to whatever the sentiment that counsel just mentioned with respect to the association that we actually have defended ourselves prior to that comment, and we actually obtained a dismissal of count five, which is the jugular. So we had to spend the time and money to do it. They claimed it's settled. They're going to pay something. Never happened. Now, counsel also mentioned with respect to Mr. Wilder. We didn't know whether they consented to Ms. Wilder representing them. We didn't know that she was limited. She disclosed that information to the LIDC when the board tried to counsel with LIDC with respect to providing the privacy information to nationwide. We had no idea until we see that response from Ms. Wilder to the LIDC stating clearly, by the way, I can do what I want to do. Second, I was limited in terms of representation by nationwide. We had no idea. Now, as it should, we want a full representation, not some limited representation that we have no idea, and we didn't know that. Now, counsel mentioned that we didn't withdraw the claim. Well, I think that's a more issue now because the underlying claim already dismissed. There's nothing to withdraw. It's gone. Now, counsel also mentioned, well, maybe they can refile it and they didn't appeal. Well, they can't do that because the dismissal based on lack of standing and dismissal on the merit. It has to be appealed by the check-healer, and the time for the check-healer to appeal it was way past. The other, I think counsel also mentioned about the association didn't appeal the judgment in 18 MR 1123 when they obtained the summary judgment. Here's why. This is where we get to the offensive use of the rights to the credit. The judgment against the association even with respect to the check-healer was a non-monetary judgment. There was no money in it. It was a production document. We have provided all the documents. We have filed all the documents into the court record. I think counsel said the same thing. We have email evidence provided by the judge. I don't care. Give it to them. We give it to them. Thousands of documents filed in the court record in 18 MR 1123 that has not been finished yet. We decide not to appeal because there's no money in there. It's a waste of time and money. That's why. Also, there was no judgment against the board of directors. It was just against the corporation the name issued of the policy. That's the reason they didn't appeal. If the board of directors was joined, the board of directors had the person in the paper in the 18 MR 1123, they would have appealed it. Maybe I can represent on the appeal. I don't know. Or maybe someone else. Ms. Wilder, immediately after the judgment was granted to Nationwide in 18 MR 1123, she filed a motion to withdraw. She said, look, Judge, this thing is gone. I want out. And Judge Fulton granted it. So they had no legal representation at all on it. But then again, we decide not to appeal because it's a non-monetary judgment, no point of doing, wasting money. In the second lawsuit, the chairman won $50,000 based on false allegations. Even as today, we didn't have this whole reason why. It's that they couldn't prove it. They dismissed it. They were dismissed and then they're supposed to pay $50,000 because they didn't find an attorney who would continue their previous lawsuit. That's why. Your time is up, Mr. Decton. Thank you, Judge. The red light is on. Okay. Thank you. Mr. Sergalis, do you have a reply? Yes, Your Honor. Just a few points I wanted to clarify. I think based on the record in the briefs, you can see that the association is somewhat misinterpreting how far the duty to defend goes. The breach of the cooperation clause judgment was obtained because basically, they tried to direct how Nationwide would use its own funds to settle the suit. There's a duty to defend. Usually, that gives up control to the insurance company. They can settle the case or they can litigate it in a way that they see fit. That's exactly what didn't happen here. They wanted, basically, it was a setup to get Mr. Decton's defense fees paid without giving the benefit of Nationwide controlling the defense, which it committed to do. That's what led to the breach of the cooperation clause. The limited representation, they didn't tender some of the claims that were in 18MR 1123 to Ms. Wheeler didn't represent them on those counts. They wanted Mr. Decton representing them as to specific counts that were filed in the Jujulio counterclaim. Whatever was tendered to Nationwide, Ms. Wheeler defended. That wasn't limited in any sort of way. That goes back into feeding into how far they think the duty to defend goes. It goes so far. I gave the example of their arguments are akin to telling an insurance company not to settle a slip and fall at a restaurant for $5,000 because that then encourages people to take dives on the restaurant's property. You can't do that. If you tender a defense to an insurance company, you give up control of that lawsuit. Not only is that the principle that goes, but there were settlements in this case reached for that specific purpose where Mr. Decton committed to giving up control of the defense of the tendered claims to Ms. Wheeler. He wouldn't get out of the way. The board members interfered with that, and that's what led to the breach of the cooperation clause. I want to get back to Justice Heddle's question regarding the naming of the board members in the first suit. Some of the board members weren't named in 18 MR 1123. Georgia Kempf is one of them, specifically. Absent clairvoyance, there was no way that we could have named Georgia Kempf in 18 MR 1123. She wasn't sued by the Jujulios. That's why the privity argument really is important because even if we had amended the pleadings to conform to the proofs in 18 MR 1123, for example, to name Shratcha, who was a defendant in 18 MR 1123, we'd be here anyway today because Kempf wasn't named in 11 MR 1123. That's why privity becomes super, super important. An association can take no action absent its board members, and that's why restitution and collateral estoppel here apply because they tried to direct how Nationwide would settle this case. It spun out of control, and now they're trying to get us to pay for Mr. Duckdong's defense fees after we appointed very capable defense counsel to handle the case. Touching back on our sanctions appeal, again, I think that the record and the briefs just paint a story of someone who has made unfounded attacks on my integrity and Ms. Weiler's integrity and Nationwide's integrity, and I think that we ought to get our fees for responding to those arguments back. Thank you. Questions from the court? Any? No? Okay, thank you. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.